ROBERT L. BLAND, Judge,
dissenting.
The claim in this case is prosecuted upon the theory of the negligence of the state department proceeded against, on account of its alleged failure to do and perform all things that might have prevented the accident which happened to claimant, particularly mentioned and described in the majority opinion.
I find myself in sharp conflict with the views maintained by my esteemed colleagues so clearly manifested by the majority statement. It is not every accident that may happen to an individual travelling on a state controlled highway that is or could under the law be actionable. It devolves upon a claimant to prove his claim and establish its merit before the court would be justified in recommending to the Legislature an appropriation of the public revenues to satisfy his claim. In all instances a claimant bears the “laboring oar.” As I construe the evidence contained in the transcript consisting of the testimony of the claimant himself and that of Zeeland Hammond, an official of the, maintenance division of the state road commission in Kanawha county, I find nothing to satisfy my mind that this claim is meritorious or that it is one which within the meaning of the act creating the state court of claims should be paid by the state. The case, as I view it, could have no meritorious standing whatever in a court of law. If the state or the state road commission would be held to the measure of responsibility claimed by claimant and upheld by the majority statement, it could not long survive bankruptcy. The majority opinion seemingly overlooks the topography of the state and what an award in this case would mean as a precedent if fol *81 lowed. The only duty that the road commission owes to persons traveling upon its highways is to make such highways reasonably safe for public travel' thereon.
The record shows that claimant had three methods of travel to and from his home from the city of Charleston on the day of the accident. He traveled one route, and, because as he stated upon the hearing that road was rough, he concluded to return over the route on which the accident occurred because it was smoother and a better road. He testified before the court that he traveled over the road upon which the accident occurred approximately three times a week. The picture of the hillside bordering .on the'road from which the slide took place did not appear neárly so gruesome and horrifying as it is pictured in the majority- statement, showing how different persons- may observe-'-different objects in different ways. In a very able opinion .prepared at the present term by Judge Cann he cited, and relied upon the well recognized law in West Virginia that ■.the-state does not guarantee freedom from accident to persons using its public roads. He-further asserts what the'Supreme Court has.held and -what every lawyer in the state -understands, that a person who travels -upon the public highways of the . state does , so at his own risk. The official who testified .upon ■behalf of respondent upon, the hearing of the claim said that he ■- traveled the road'every day and had. traveled it the day before the accident and that he observed nothing that would indicate that the road was not safe for .public travel. It is further shown by'the evidence that the -weather had been rainy and the falling of the stone. was something that might occur at any time and any place and oh any road of the state, under conditions such as existed at the time of the accident.
Claimant has not met the burden of proof imposed upon him to establish the merit of his claim and I would deny an award to him.